IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

DELILAHDEE BITE,                 )      CIVIL NO. 05-00406 SOM/BMK
                                 )
          Plaintiff,             )
                                 )      ORDER DENYING DEFENDANTS'
     vs.                         )      MOTION FOR SUMMARY JUDGMENT
                                 )
EDWARD G CO, INC. AND THE        )
FISHING VESSEL EDWARD G,         )
                                 )
          Defendants.            )
_____  )

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I.        INTRODUCTION.

          On June 24, 2005, Plaintiff Delilahdee Bite ("Bite")

filed this suit against a fishing vessel called the "Edward G."

("the vessel") and against the vessel's owner, Edward G. Co.,

Inc. (collectively, "Defendants").  In the complaint, Bite

alleges that, on July 2, 2003, she was aboard the vessel as a

marine fisheries observer, and that Defendants' negligence caused

her "to be forcefully thrown from the bunk in her quarters to the

deck, in a manner which caused her to suffer serious bodily

injury."

          On September 14, 2006, Defendants filed a motion for

summary judgment, asking this court to dismiss Bite's lawsuit, as

§ 1383a(e)(7) of the Marine Mammal Protection Act ("MMPA"), 16

U.S.C. § 1361 et seq., "bars any civil action for illness,

disability, injury or death against the vessel or its owner, with

the exception of 'willful misconduct' or circumstances where the

observer is 'formally engaged' to perform crew duties."  In the alternative, Defendants point to the exclusivity provision in the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 <u>et</u> <u>seq.</u>, which bars certain claims for damages against the United States.  Defendants contend that they are either an "extension" or "instrumentality" of the United States for purposes of that provision, and that Bite's claims against them are therefore barred.

Bite responds that § 1383a of the MMPA "was an interim piece of legislation which had been superseded almost ten years prior to the incident in question."  Bite maintains that "the superseding statute does not contain any prohibition against a suit against a vessel by an observer similar to the prohibition contained in the interim statute upon which the defendants seek to rely."  With respect to Defendants' FECA argument, Bite contends that she filed this lawsuit "specifically to protect the right of the United States government to retain its lien interests under the FECA against [Defendants]."  Bite says, "It is far-fetched and ironic that the defendants attempt to claim that they have the same standing in this matter as the United States Government."

Because Defendants do not meet their burden of establishing that § 1383a of the MMPA is still in effect, and

2

because they misinterpret FECA's exclusivity provision, the court denies Defendants' motion for summary judgment.

II.       LEGAL STANDARD.

Summary judgment shall be granted when

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr., 383 F.3d 1018, 1024 (9th Cir. 2004); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec.

3

Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing
Celotex Corp., 477 U.S. at 323).

"When the moving party has carried its burden under
Rule 56(c), its opponent must do more than simply show that there
is some metaphysical doubt as to the material facts." Matsushita
Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).
The nonmoving party may not rely on the mere allegations in the
pleadings and instead "must set forth specific facts showing that
there is a genuine issue for trial." Porter, 383 F.3d at 1024
(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256
(1986)).  "A genuine dispute arises if the evidence is such that
a reasonable jury could return a verdict for the nonmoving
party." California v. Campbell, 319 F.3d 1161, 1166 (9th Cir.
2003); accord Addisu, 198 F.3d at 1134 ("There must be enough
doubt for a 'reasonable trier of fact' to find for plaintiffs in
order to defeat the summary judgment motion.").

When "direct evidence" produced by the moving party
conflicts with "direct evidence" produced by the party opposing
summary judgment, "the judge must assume the truth of the
evidence set forth by the nonmoving party with respect to that
fact." T.W. Elec. Serv., 809 F.2d at 631.  In other words,
evidence and inferences must be construed in the light most
favorable to the nonmoving party. Porter, 338 F.3d at 1024.  The
court does not make credibility determinations or weigh

4

conflicting evidence at the summary judgment stage.  Id.
However, inferences may be drawn from underlying facts not in
dispute, as well as from disputed facts that the judge is
required to resolve in favor of the nonmoving party.  T.W. Elec.
Serv., 809 F.2d at 631.

III.     BACKGROUND.

        Bite was employed by Saltwater, Inc. ("Saltwater"),
which was awarded Contract #50ABNF-1-00005 to provide services
for the Hawaii Longline Observer Program on October 23, 2000.
Complaint ¶ 3; Ex. 2 (attached to Motion CSF) at Bate stamp
000027.  Bite says that she became a marine fisheries observer
for Saltwater and provided services "as a Contracted Observer to
the United States Department of Commerce as required under the
Magnusson-Stevens Fishery Conservation and Management Act."
Complaint ¶ 3.

        Bite alleges that she "embark[ed] upon a fishing voyage
from the Port of Honolulu to [o]bserve the long-line fishing
operations aboard the [vessel], in furtherance of her duties as a
Contract observer."  Complaint ¶ 4.  Bite says that, while
onboard the vessel on July 2, 2003, she was thrown from her bunk
to the deck and seriously injured.  Complaint ¶ 7.

        Bite "pursued her rights under the FECA as soon as she
was advised that those benefits were available."  Opp. at 19.  As
of July 21, 2006, the United States had "disbursed $18,506.79 as

5

compensation" to Bite in connection with her FECA claim.  Ex. B
(attached to Opp.) at 1.  On July 31, 2006, the U.S. Department
of Labor sent a letter to Bite's attorney stating, "Our review of
the facts of the injury in question indicate that a third party
may be liable for the injury; your client is therefore required,
pursuant to 5 U.S.C. § 8131, to prosecute an action against any
third party in . . . her own name."  Ex. B (attached to Opp.) at
1.  Bite explains that she initiated the present lawsuit
"specifically to protect the right of the United States
government to retain its lien interests under the FECA against
[Defendants]."  Opp. at 17.

IV.      ANALYSIS.

        A.   Section 1383a of the MMPA.

        Defendants argue that, with two exceptions not
applicable here, § 1383a of the MMPA bars Bite from bringing "a
civil action under any law of the United Sates for . . . illness,
disability, injury, or death against the vessel or vessel owner."
16 U.S.C. § 1383a(e)(7).  Defendants fail to demonstrate that
they are entitled to judgment as a matter of law on this point,
as they fail to show that § 1383a is still in effect.

        Section 1383a(a)(1) applies to marine fisheries
observers and expressly preempts 16 U.S.C. §§ 1371 (moratorium on
taking and importing marine mammals and marine mammal products),
1373 (regulations on taking marine mammals), and 1374 (permits)

6

during the period "beginning on November 23, 1988, and until superseded by regulations prescribed under section 1387 of this title, or until September 1, 1995, whichever is earlier."  By its terms, § 1383a's limitation of liability for observers therefore ended no later than September 1, 1995.  In fact, that liability limitation might have expired two days earlier.  <u>See</u> 50 C.F.R. § 229.1(a) (Aug. 30, 1995) ("The regulations in this part implement sections 101(a)(5)(E) and 118 of the Marine Mammal Protection Act of 1972, as amended (16 U.S.C. 1371(a)(5)(E) and 1387).").

Because Bite's injuries occurred after 1995, § 1383a(e)(7) is inapplicable.  This reading of the statute is consistent with its legislative history.  <u>See</u>, <u>e.g.</u>, Fisheries Act of 1995, P.L. 104-43 (1995) (noting that § 1383a had a "sunset date" and that, with the various amendments, that section was effective only "until superseded by regulations prescribed under section 118, or until September 1, 1995, whichever is earlier").  This reading of § 1383a is also consistent with the interpretation of it by the agency implementing the MMPA.

Addressing public comments to the proposed regulations governing § 1387, the Department of Commerce, National Oceanic and Atmospheric Administration, interpreted § 1383a's limitation of liability for observers as ceasing in 1995.

> Comment 56:  Many vessel owners and operators
> are concerned with potential liability for

carrying observers.  NMFS should resolve the
liability issue and use a "willful
misconduct" standard against which vessels'
owners or masters will be measured in the
case of injury to an observer.

Response:  Section 114(e)(7) [codified at 16
U.S.C. § 1383a(e)(7)] provided that an
observer on a vessel that was ill, disabled,
injured, or killed from their service as an
observer on that vessel could not bring a
civil action under any law of the United
States for that illness, disability, injury,
or death against the vessel or vessel owner,
unless the claim arose from the vessel
owner's "willful misconduct."  That expiring
statutory provision was implemented in NMFS'
section 114 regulations at 50 CFR
229.6(c)(3)(vi).

New section 118 [16 U.S.C. § 1387], which is
being implemented by this rulemaking,
replaces section 114.  Section 118 does not
contain a limitation of liability provision
similar to the one in section 114(e)(7).
Thus, there is no longer a statutory limit in
the MMPA on claims that can be made by
observers against vessel owners.  Therefore,
NMFS has no legal authority to include a
limitation of liability provision in this
rule.  Vessel owners concerned about
liability for claims made by observers should
consider obtaining liability insurance.  The
lack of any such coverage is not a basis
under the MMPA for refusing to carry an
observer if requested by NMFS.

Taking of Marine Mammals Incidental to Commercial Fishing

Operations; Authorization for Commercial Fisheries, 60 Fed. Reg.

45086, 45095 (Aug. 30, 1995).

Defendants are unpersuasive in arguing that § 1383a

must still be in effect because § 1387(a)(1) states that,

"[e]ffective on April 30, 1994, and except as provided in section

8

1383a . . . , the provisions of this section shall govern the incidental taking of marine mammals."  Sections 1383a and 1387 can be read consistently.  The enactment of § 1387 itself did not affect the sunset provision in § 1383a.  The sunset provision was triggered "by <u>regulations prescribed under section 1387</u>."  16 U.S.C. § 1383a(a)(1).  Accordingly, §§ 1383a and 1387 coexisted for a short period of time.  This does not mean, however, that § 1383a is still in effect or that its provisions were intended to take precedence over those contained in § 1387 today.  Nor does it render the "except as provided in section 1383a" language contained in § 1387 meaningless.  That language had meaning until August or September 1995.  Until that time, the requirements of § 1383a trumped the requirements of § 1387.

Under these circumstances, Defendants have failed to demonstrate that they are entitled to summary judgment based on their argument that § 1383a prohibits Bite's claims.

B.    <u>FECA'S Exclusivity Provision.</u>

Defendants argue that they are protected by FECA's exclusivity provision, which they say "is broad, as it extends to 'any extension' of the United States."  Reply at 10.  Contending that "Bite's duties were in furtherance of a government program" and that "Defendants were required to transport Bite aboard [the vessel]," Defendants posit that they "fall within the phrase 'any extension' of the United States and . . . should be entitled to

the protections of FECA's exclusivity provision."  Reply at 10.

At the hearing on the present motion, Defendants clarified that

they also qualify as an "instrumentality of the United States"

protected by the exclusivity provision.  Defendants misinterpret

the statute.

FECA "provides for the payment of workers' compensation

benefits to civilian officers and employees of all branches of

the Government of the United States."  20 C.F.R. § 10.0; see also

Moe v. United States, 326 F.3d 1025, 1068 (9th Cir. 2003) ("FECA

requires the Government to 'pay compensation for the disability

or death of an employee resulting from personal injury sustained

while in the performance of his duty.'").  FECA contains an

exclusivity provision, which states:

> The liability of the United States or an
> instrumentality thereof under this subchapter
> or any extension thereof with respect to the
> injury or death of an employee is exclusive
> and instead of all other liability of the
> United States or the instrumentality to the
> employee . . . and any other person otherwise
> entitled to recover damages from the United
> States or the instrumentality because of the
> injury or death in a direct judicial
> proceeding, in a civil action, or in
> admiralty, or by an administrative or
> judicial proceeding under a workmen's
> compensation statute or under a Federal tort
> liability statute.  However, this subsection
> does not apply to a master or a member of a
> crew of a vessel.

5 U.S.C. § 8116(c).

Defendants interpret the exclusivity provision as applying to the liability of "the United States or . . . any extension thereof." Motion at 18; Reply at 10. As used in the provision, "any extension thereof" could modify one of three nouns: "liability," "the United States or an instrumentality thereof," or "this subchapter." Of the three phrases, "any extension thereof" directly follows and is closest to "this subchapter" and therefore appears to modify that term.

Additionally, the meaning of "any extension thereof" makes its connection to "this subchapter" most logical. If "any extension thereof" modifies "liability," then the exclusivity provision applies to the United States' or its instrumentality's "liability or extension of liability." The court is at a loss to understand how the liability of the United States can be "extended." What exactly is an "extension" of liability? Defendants do not even posit a meaning or give any example.

If "any extension thereof" modifies "the United States or an instrumentality thereof," the provision applies to the liability of "any extension of the United States or its instrumentality." It is similarly unclear what an extension of an instrumentality of the United States could be. Indeed, at the hearing on this motion, Defendants conceded that any instrumentality of the United States would also be an extension of the United States, making the reference to "instrumentality"

11

superfluous.  Courts should construe language to avoid making a
nullity of any term.  <u>Comm'r of Internal Revenue v. Ewing</u>, 439
F.3d 1009, 1014 (9th Cir. 2006) ("This violates the basic
principle of statutory construction that 'a statute ought, upon
the whole, to be so construed that, if it can be prevented, no
clause, sentence, or word shall be superfluous, void, or
insignificant.'").

 Defendants try to salvage their "extension of the
United States or an instrumentality thereof" argument by pointing
to the parallel grammatical construction in the statute.  They
note that the words "or an instrumentality thereof" are tied to
"United States" and argue that the grammatically parallel "or any
extension thereof" must also be read as tied to "United States."
This reading ignores the words "under this subchapter" between
"or an instrumentality thereof" and "or any extension thereof."
The flaw in Defendants' argument is clear when other nouns are
substituted for the nouns in the statute but the same grammatical
structure is retained.  Consider the following sentence:  "The
pension benefits of the employee or a dependent thereof under
this pension plan or any extension thereof are exclusive."  In
this sentence, "or a dependent thereof" is parallel to "or any
extension thereof," but the extension clearly is not an extension
of the employee or of the dependent.  Instead, what is extended
is the closest noun, which is "plan."

12

Similarly, if "any extension thereof" modifies "this subchapter," the provision applies to the United States' or an instrumentality's liability "under this subchapter or any extension of this subchapter." Statutes (or subchapters of statutes) can be extended in duration or scope by future amendments, or other statutory provisions. Subchapters can be "extended" in clarifying regulations, rules, or policies. Interpreting "any extension thereof" to modify "this subchapter" makes the most sense. The court therefore rejects Defendants' assertion that FECA's exclusivity provision applies to the liability of "any extension of the United States."

The above interpretation is consistent with decisions by other courts that have interpreted the plain language of FECA's exclusivity provision as applying to the liability of only the United States or its <u>instrumentalities</u>, without mentioning extensions of the United States or extensions of instrumentalities. <u>See</u> 5 U.S.C. § 8116(c) (noting that the provision applies to anyone "entitled to recover damages from the United States or the instrumentality"); <u>cf. Elman v. United States</u>, 173 F.3d 486, 491–92 (3d Cir. 1999) ("FECA recovery bars liability that is (1) 'of the United States or the instrumentality'; (2) 'to the employee'; and (3) 'because of the injury compensable under FECA.'"); <u>Wilder v. United States</u>, 873 F.2d 285, 287 (11th Cir. 1989) (noting that FECA's exclusivity

13

provision "purports to make exclusive the liability of the United States and its instrumentalities under [FECA]"); <u>Aparicio v. Swan Lake</u>, 643 F.2d 1109, 1114–15 (5th Cir. 1981) (noting that the exclusivity provision "limit[s] the liability of the United States or its instrumentality to the benefits provided by that act").  Because Defendants do not suggest that they are the United States, this provision applies to their liability only if they are an instrumentality of the United States.  FECA does not define an "instrumentality" of the United States, and Defendants do not establish that they are "instrumentalities" of the United States.

At the hearing on this motion, Defendants submitted five cases to the court, which they say support their position that they are instrumentalities of the United States.  Each case is addressed below, but none is persuasive on the point in issue.

In <u>Johansen v. United States</u>, 343 U.S. 427, 428 (1952), the Supreme Court was faced with determining "whether Congress, in enacting the Public Vessels Act of 1925, has consented that the United States be sued for 'damages' by or on behalf of members of the civil service component of the crew of military transport vessels."  The two injured seamen in that case were "employed as civilian members of the crews of Army Transport vessels, owned and operated by the United States," and the vessels were "'public vessels,' not 'merchant vessels.'"  <u>Id.</u>

After examining "other statutes which are part of the system of remedies against the Government available to seamen for personal injuries," the Court concluded, "we are convinced that [FECA] is the exclusive remedy for civilian seamen on public vessels."  Id. at 428, 441 ("We hold that the benefits available to such seamen under [FECA] are of such a nature as to preclude a suit for damages under the Public Vessels Act.").

In Patterson v. United States, 359 U.S. 495, 495 (1959), the court extended its holding in Johansen to merchant vessels.  In Patterson, the plaintiffs "were injured in the course of their employment with the United States while aboard vessels operated by the Government and engaged in merchant service."  Id.  After summarizing its conclusion in Johansen, the Court ruled, "The considerations which led to [our] conclusion [in Johansen] are equally applicable to cases where the government vessel is engaged in merchant service."

Johansen and Patterson, which concerned seamen injured while performing their job duties, are inapposite to the present case.  It was undisputed in those cases that the seamen were aboard vessels that were "owned and operated by the United States."  See Patterson, 359 U.S. at 495; Johansen, 343 U.S. at 428.  The seamen could not sue the United States itself.  Whether the seamen could sue the vessels or the vessel owners as

instrumentalities of the United States was not at issue in either case.

In <u>Lewis v. United States</u>, 680 F.2d 1239, 1240 (9th Cir. 1982), the plaintiff was injured by a vehicle owned and operated by the Los Angeles branch of the Federal Reserve Bank of San Francisco.  The plaintiff brought suit under the Federal Tort Claims Act ("FTCA"), which "creates liability for injuries 'caused by the negligent or wrongful act or omission' of an employee of any federal agency . . . ."  <u>Id.</u>  The FTCA defines "federal agency" as "the executive departments, the military departments, independent establishments of the United States, and corporations acting primarily as instrumentalities of the United States."  <u>Id.</u>  The district court dismissed the case, and the plaintiff appealed.  <u>Id.</u>  The Ninth Circuit considered whether the bank was a federal agency under the FTCA.  <u>Id.</u>  The court noted that, although Federal Reserve Banks "have properly been held to be federal instrumentalities for some purposes," the "critical factor" for determining whether an entity is a federal agency within the meaning of the FTCA "is the existence of federal government control over the 'detailed physical performance' and 'day to day operation' of that entity."  <u>Id.</u> at 1240, 1242.  Because "[e]ach Bank is statutorily empowered to conduct [their] activities without day to day direction from the federal government," the Ninth Circuit concluded that "the

Reserve Banks are not federal agencies for purposes of the [FTCA]."

In <u>Macharia v. United States</u>, 334 F.3d 61, 63, 68 (D.C. Cir. 2003), the District of Columbia Circuit was similarly tasked with deciding whether a "security company working under contract with the State Department" to provide security for the United States Embassy in Kenya was a federal agency within the meaning of the FTCA. The court noted that the "contractor's negligence may only be imputed to the United States if the contractor's day-to-day operations are supervised by the Federal Government." <u>Id.</u> at 68. The court ultimately ruled that the security company was not a federal agency within the meaning of the FTCA, as the plaintiffs failed to "demonstrat[e] day-to-day State Department supervision of the contractor." <u>Id.</u>

Neither <u>Lewis</u> nor <u>Macharia</u> addressed whether the entities at issue were instrumentalities of the United States under FECA. Rather, they tackled the question of whether the entities were federal agencies under the FTCA. On that basis alone, the cases are unpersuasive. Nevertheless, even if this court applies the test set forth in <u>Lewis</u> and <u>Macharia</u>--<u>i.e.</u>, whether the federal government controlled Defendants' "'detailed physical performance' and 'day-to-day operation,'" Defendants provide this court with no evidence that the federal government

had such control over them.   See Lewis, 680 F.2d at 1240; see also Macharia, 334 F.3d at 68.

Defendants also cite Falls City Brewing Co. v. Reeves, 40 F. Supp. 35, 39 (W.D. Ky. 1941), in which the District Court of the Western District of Kentucky was faced with determining whether "the Fort Knox Post Exchange . . . is an instrumentality of the United States within the meaning of the Buck Resolution." The court stated:

> 'Instrumentality' is defined by Webster as 'a condition of being an instrument; subordinate or auxiliary agency; agency of anything as means to an end.'   The same word is defined in 32 Corpus Juris, page 947, as 'anything used as a means or an agency; that which is instrumental; the quality or condition of being instrumental.'

The court noted that the Fort Knox Post Exchange:  (1) "is located within the Federal reservation known as Fort Knox and conducts its business in a building owned and provided by the United States"; (2) "was organized under Army Regulations"; (3) "is an integral part of an army organization and is an essential factor in military life"; and (4) is funded in part "by way of direct appropriations by the United States Congress."  Id. at 37, 39.  Additionally, the court acknowledged that "the military reservation of Fort Knox is under the exclusive jurisdiction of the United States."  Id. at 39.  Because these attributes made the Post Exchange "a subordinate or auxiliary agency," the court held that it "is a federal instrumentality

18

within the purview of the exemption clause of the Buck Resolution." Id. at 40.

The Falls City Brewing Co. court was deciding whether the Post Exchange was an instrumentality of the United States for purposes of the Buck Resolution, not FECA.  However, even if this court applies the definitions of "instrumentality" used by that court, the court has insufficient evidence before it to conclude that Defendants are a "subordinate or auxiliary agency" of the United States, that they "are used as a means" by the United States, or that they are "instrumental" to the United States. See Falls City Brewing Co., 40 F. Supp. at 39.  Unlike the Post Exchange, Defendants are not located on a federal reservation, were not organized under military regulations, and are not funded by direct appropriations by Congress.  Defendants present no evidence establishing circumstances analogous to those in Falls City Brewing Co.

Pointing this court to no evidence that their day-to-day operations are controlled by the federal government or that they are a subordinate or auxiliary agency of the United States, Defendants fail to establish that they are "federal agencies" or "instrumentalities" under the cases they provide to the court.

19

V.        CONCLUSION.

In light of the foregoing, the court denies Defendants' motion for summary judgment.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 13, 2006.



_____
Susan Oki Mollway
United States District Judge

**Bite v. Edward G. Co., Inc., et al.**, Civ. No. 05-00406 SOM/BMK; ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.